UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VINCENT R. COCCOLI, SR.,
     Plaintiff,

     v.
                              CIVIL ACTION NO.
                              13-12757-MBB

ALFRED DAPRATO,
FREDAP, INC. and
FREDAP REALTY TRUST,
     Defendants.


**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF STANDING**
**(DOCKET ENTRY # 28); MOTION FOR ALLOWANCE OF REAL ESTATE**
**ATTACHMENT (DOCKET ENTRY # 18); MOTION FOR APPROVAL OF REAL**
**ESTATE ATTACHMENT (DOCKET ENTRY # 21)**

**May 13, 2014**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion to dismiss for lack

of standing (Docket Entry # 28) filed by defendants Alfred

Daprato ("Daprato"), FREDAP, Inc. and FREDAP Realty Trust[1]

(collectively "defendants") under Fed.R.Civ.P. 12(b)(1) ("Rule

12(b)(1)") and two motions for a real estate attachment (Docket

Entry ## 18 & 21) filed by plaintiff Vincent R. Coccoli, Sr.

("Coccoli") under Mass.R.Civ.P. 4.1 ("Rule 4.1").  Coccoli

opposes the motion to dismiss (Docket Entry # 30) and defendants

---

[1]  The complaint identifies these two parties in the caption.
See Fed.R.Civ.P. 10(a) (caption of complaint "must name all
parties").  The complaint refers to "FREDAP, Inc./FREDAP Realty
Trust" as well as "FREDAP" and "FREDAP, Inc."

oppose the motions for a real estate attachment (Docket Entry # 22). Defendants also responded to various documents Coccoli filed on January 28, 2014, (Docket Entry # 30-1 to # 30-6) (Docket Entry # 40) and had the opportunity at a March 3, 2014 hearing to respond to documents Coccoli filed on January 24, 2014.[2] After conducting the hearing on March 3, 2014, this court took the motions (Docket Entry ## 18, 21 & 28) under advisement.

The complaint alleges that Anthony Petrillo ("Petrillo") "of Millville Associates," Inc. ("Millville") paid property taxes for two adjoining parcels of land located in Millville, Massachusetts "for 1993 to 1997." (Docket Entry # 1, ¶ 8). Coccoli seeks to recover the property tax payments from defendants together with interest and costs from 1997 to 2012 for a total amount of $411,000.00. (Docket Entry # 1, p. 5). The brevis complaint also refers to an October 15, 2010 verbal agreement between Coccoli, Petrillo and Luigi D'Arcangelo ("D'Arcangelo") of Millville on the one hand and "Daprato, John Daprato and FREDAP" on the other hand to "develop the parcels of land." (Docket Entry # 1, ¶ 20).

## STANDARD OF REVIEW

In considering a Rule 12(b)(1) motion to dismiss based on lack of standing, the court accepts "'as true all well-pleaded

---

[2] Because Coccoli is proceeding pro se and defendants had ample opportunity to respond to the documents, this court will include them (Docket Entry # 27-1 to 27-20) as part of the record.

factual averments in the plaintiff's complaint and indulge[s] all reasonable inferences therefrom in his favor.'" <u>Katz v. Pershing, LLC</u>, 672 F.3d 64, 70-71 (1st Cir. 2012) (internal ellipses omitted); <u>Sanchez ex rel. D.R.-S. v. U.S.</u>, 671 F.3d 86, 92 (1st Cir. 2012) ("credit[ing] the plaintiff's well-pled factual allegations and draw[ing] all reasonable inferences in the plaintiff's favor" under Rule 12(b)(1)); <u>Warth v. Seldin</u>, 422 U.S. 490, 501-02 (1975).

In evaluating a Rule 12(b)(1) motion to dismiss, the complaint is liberally construed and the court "ordinarily 'may consider whatever evidence has been submitted, such as . . . depositions and exhibits." <u>Carroll v. U.S.</u>, 661 F.3d 87, 94 (1st Cir. 2011); <u>see</u> <u>Rice v. Holder</u>, 898 F.Supp.2d 291, 294 n.2 (D.D.C. 2012) (liberally construing pro se complaint in resolving Rule 12(b)(1) motion to dismiss). Accordingly, in addition to the factual averments in the complaint, the Rule 12(b)(1) record includes the documents submitted by the parties.

In evaluating a motion for attachment, Rule 4.1 requires the moving party to submit affidavits that "set forth specific facts." Mass.R.Civ.P. 4.1(h). Coccoli certifies that the facts in the complaint are true under the pains and penalties of perjury. Specific facts in the verified complaint are therefore part of the record vis-à-vis the motions for attachment.

FACTUAL BACKGROUND

Coccoli, a resident of Chepachet, Rhode Island, has "been a member" of Millville "since 1992." (Docket Entry # 1, ¶¶ 1-2). FREDAP, Inc. "is a Domestic Profit Corporation organized" in Massachusetts.[3] (Docket Entry # 1, ¶ 4).

The present dispute has its origins in two 1928 conveyances of land owned by Frederick Thayer for nonpayment of taxes to the Town of Millville. (Docket Entry # 27-1). In November 1928, after a public auction, the Millville Tax Collector ("the Tax Collector") conveyed all right and title of the "Frederick Thayer home sprout land 30 acres more or less" (book 2483, page 289) ("the Thayer land") to John H. McLaughlin ("John McLaughlin") and all right and title of the "Blake land 40 acres more or less" (book 2483, page 288) ("the Blake land") to Fred M. McLaughlin ("Fred McLaughlin").[4] (Docket Entry # 27-1). In October 1963, the heirs of John and Fred McLaughlin conveyed the Thayer land and the Blake land to Richard and Anne Pomfret ("the Pomfrets") (book 4417, pages 289-290). (Docket Entry # 27-4) (Docket Entry # 47-6).[5]

---

[3] Defendants' answer alleges that FREDAP, Inc., a Massachusetts corporation, dissolved in 1998. It also represents that FREDAP Realty Trust is a Massachusetts realty trust.

[4] References to book and page numbers refer to the location of the recording of the deed at the Worcester District Registry of Deeds ("the registry").

[5] This court takes judicial notice of the 1963 deed (Docket Entry # 47-6). See State National Bank of Big Spring v. Lew, 958 F.Supp.2d 127, 157 n.27 (D.D.C. 2013) (taking judicial notice of foreclosure information on government website in

Almost ten years later on March 31, 1973, the Pomfrets conveyed certain property to Valmore B. Jacob ("Jacob") (book 5393, page 276). The deed recorded on October 12, 1973, states that the Pomfrets conveyed their right and title to land "containing 103 acres, more or less, which parcel was deeded to us by deed of Fred M. McLaughlin." (Docket Entry # 27-1). As noted above, Fred McLaughlin owned the Blake land of 40 acres. The description in the deed of 103 acres describes the land as "lying *westerly* of said Thayer Street . . .." (Docket Entry # 27-1) (emphasis added). The deed does not cite to the book and page number of either the 1963 or the 1928 deeds. Undated aerial surveys provided by Coccoli plot out the 30 acre Blake land, the 40 acre Thayer land and a 32.53 acre parcel of land for a total of 102.53 acres of property. (Docket Entry ## 30-2 & 27-20). A memorandum issued by John R. Harrington ("Harrington") of the Tax Department of the Land Court ("the Harrington memorandum") in a 2003 tax lien case involving the Blake land states that he reviewed a title report and that the Pomfrets conveyed "the locus of 40 acres" to Jacob as part of the 103 acres conveyed in the 1973 deed. (Docket Entry # 27-

_____

context of deciding Rule 12(b)(1) motion to dismiss for lack of standing). Defendants do not question the authenticity of the recorded deed. The 1977 deed submitted in opposition to the standing motion (Docket Entry # 30-3) refers to the 1963 deed. Likewise, defendants refer to the 1963 deed in response to Coccoli's opposition to the standing motion. (Docket Entry # 40).

12).

In or around November 1988, Jacob filed a petition to register land in the Land Court. The petition in case number 42453 ("the registration case") describes "[t]wo parcels of land" and attaches a survey performed by Andrews Survey and Engineering, Inc.[6] (Docket Entry ## 27-2 & 27-3). It depicts one of the parcels as bounded "easterly by Thayer Street" whereas the Pomfrets' deed to Jacob (book 5393, page 276) describes land "lying westerly" of Thayer Street. The petition represents that Jacob obtained title to the land by virtue of the 1973 deed from the Pomfrets at "Book 5393 Page 276." (Docket Entry # 27-2).

Meanwhile, as stated in a March 1977 deed (book 6135, page 48), the Pomfrets conveyed the Thayer land "containing 30 acres more or less," and the "Blake Land, containing 40 acres, more or less," to Paul J. DiMaio ("DiMaio"), Benson E. Gold ("Gold") and Joseph R. Tutalo ("Tutalo"). (Docket Entry # 30-3). The 1977 deed refers to the 1928 recording of the Thayer land (book 2483, page 289) and the Blake land (book 2483, page 288) as well as the 1963 recording of "the same premises" (book 4417, page 289). In a July 1984 deed (book 8296, page 33), DiMaio, Gold and Tutalo conveyed the same property described in the 1977 deed

---

[6] The copy of the Andrews survey Coccoli provides is difficult to read.

(book 6135, page 48) to Fred and John Daprato.[7] (Docket Entry # 30-4). In October 1986, the Town of Millville recorded a tax lien on land described as recorded in book 6135 at page 48 and in book 8296 at page 33. (Docket Entry # 30-6). In June 1989, Fred and John Daprato conveyed all right and title to the Thayer land "containing 30 acres, more or less" recorded at "Book 2483, Page 289" and to "[t]he Blake Land, containing 40 acres, more or less" recorded at "Book 2483, Page 288" to Daprato, as trustee of FREDAP Realty Trust (book 12247, page 92).[8] The deed further states that Fred and John Daprato's title arises from the "deed dated 10 July 1984" recorded at "Book 8296, Page 33." (Docket Entry # 22-1). The March 1977 deed and conveyance by the Pomfrets is later than the October 1973 deed and conveyance by the Pomfrets.[9]

On December 29, 1992, Jacob conveyed all his right and title to the property that he received from the Pomfrets to Millville. (Docket Entry # 1, ¶ 6) (Docket Entry # 22-5).[10] The

---

[7] The only difference in the property descriptions is certain frontage noted in the March 1977 deed. The 1984 deed refers to both the 1977 deed and the 1928 deed by book and page number. (Docket Entry # 30-4).

[8] Defendants allege that this land has an address of 154 Thayer Street. The address is not noted on the deed.

[9] The aforementioned Harrington memorandum states that the title report reflects "an additional chain of title out of the Pomfrets." (Docket Entry # 27-12).

[10] The complaint states that Millville purchased all right and title to 103 acres of property. (Docket Entry # 1, ¶ 6). The deed, which contains a description of the land as "lying

deed (book 14943, page 153), recorded on February 8, 1993, states that the property is "the same premises described" in the registration case as well as in the 1973 deed from the Pomfrets to Jacob "in Book 5393, Page 276." (Docket Entry # 22-5). By checks dated February 4, 1993, Jacob paid the Tax Collector taxes on the property. (Docket Entry # 27-6). On February 8, 1993, the Town of Millville recorded an instrument of redemption acknowledging satisfaction of a tax title account on the 76 acre property recorded in book 5393 at page 276. (Docket Entry # 27-6). On the same date, D'Arcangelo, as president of Millville, and Jacob executed a settlement and release agreement mutually releasing each other from liability. The agreement also assigned Jacob's rights in the registration case to Millville.[11] (Docket Entry # 47-6).

In November 1994, the Tax Collector acquired a tax deed to the property described in "Book 14943, Page 153" for nonpayment of 1993 and 1994 property taxes (book 167110, page 58). (Docket Entry # 22-6). The tax deed describes the property as "situated at 179 Thayer Street." (Docket Entry # 22-6).

In 1997, the Town of Millville notified Millville "that

westerly of Thayer Street," does not refer to the acreage. (Docket Entry # 22-5).
[11] Coccoli filed the settlement agreement after the March 2014 hearing. It is summarized only to provide background information. Consideration of the agreement does *not* alter the decision to deny the attachment or to allow the standing motion.

taxes had not been paid since 1993" on the Blake land and the
Thayer land which "is now known as 148 Thayer Street." (Docket
Entry # 1, ¶ 7).[12]  In a 1997 letter to D'Arcangelo, Fram Saad,
John Petrillo, Egidio Testani and Donald Studley, all
shareholders of Millville, Millville asked that "each
shareholder pay their respective share of the taxes."[13] (Docket
Entry # 27-7).  The letter also notes that "Petrillo has
expressed an interest in paying the taxes" and, "[i]f he does,"
Millville "has one year to redeem the property" at "18%
interest" before Petrillo "has the right to foreclose." (Docket
Entry # 27-7).  By checks dated March 20, 1997, signed by
Petrillo and bearing an address of "Skeeter Development, Inc.,"
Petrillo paid the property taxes to the Town of Millville in a
total amount of $10,771.22 ($8,639.11 + $2,122.11 + $10.00).[14]

---

[12]  Defendants deny this statement set out in the complaint.  For
standing purposes, it is accepted as true.  See Katz v.
Pershing, LLC, 672 F.3d at 70-71.

[13]  As stated in the complaint, Coccoli has been a member of
Millville since 1992.  (Docket Entry # 1, ¶ 2).  The letter does
not identify Coccoli as a shareholder.

[14]  The complaint seeks to recover this amount along with
interest and costs through 2012 for a total of $411,000.00.
Defendants maintain that Millville did not pay the property
taxes on the Blake and the Thayer land that Daprato, as trustee
of FREDAP Realty Trust, owned.  Rather, Millville paid taxes on
property situated at the 179 Thayer Street address as described
in the 1992 deed from Jacob to Millville (book 14943, page 153),
according to defendants.  The Tax Collector recorded the
aforementioned tax deed (book 16710, page 58) and the
acknowledgment of satisfaction of the tax title account (book
18690, page 114) noting the 179 Thayer Street address.  (Docket
Entry # 22-7).  A September 18, 2013 letter by the Tax Collector

(Docket Entry # 1, ¶ 8) (Docket Entry # 1-2).

Also in 1997, the Tax Collector acquired a tax deed on "land situated at 154 Thayer Street" described in "Book 12247 Page 92," i.e., the 1989 deed conveying the Thayer land and the Blake land to Daprato, as trustee of FREDAP Realty Trust. (Docket Entry # 22-2). The tax deed depicts the property as "containing 69.457 acres, more or less." (Docket Entry # 22-4). After payment of the overdue taxes in September 2001, the Tax Collector recorded an acknowledgment of "satisfaction of the tax title account" (book 24984, page 376) on the "land situated at 154 Thayer Street." (Docket Entry # 22-4).

In December 2003, Millville filed two tax lien cases against Frederick Thayer in the Land Court. D'Arcangelo signed each complaint as president of Millville. (Docket Entry ## 27-8 & 27-9). The first tax lien case, number 130260 ("TL 130260"), seeks "to foreclose a tax lien acquired under" the tax deed recorded at "Book 2483 Page 288" for the Blake land. The second tax lien case, number 130261 ("TL 130261"), seeks "to foreclose a tax lien acquired under" the tax deed recorded at "Book 2483 Page 289" for the Thayer land. (Docket Entry ## 1-3, 1-4, 27-8 & 27-9).

In or around February 2004, Millville requested George S.

---

to Fred Daprato also refers to the payment of taxes on the 179 Thayer Street property with the above noted checks in the amounts $8,639.11 and $2,122.11. (Docket Entry # 22-8).

Norton, Esq. ("Attorney Norton"), an "approved Land Court Examiner, to review the record title to the Property . . . and identify any title issues." (Docket Entry # 1, ¶ 10). In May 2004, Stephen A. Izzi, Esq. ("Attorney Izzi") entered an appearance for Millville in both tax lien cases. (Docket Entry # 27-12). On June 2, 2004, the Land Court referred the matter to Attorney Norton, who Coccoli identifies as the "the Land Court Examiner" in TL 130260 and TL 130261. (Docket Entry # 1, ¶ 11) (Docket Entry # 27-12). Attorney Norton filed a report in each case in September 2004. (Docket Entry # 27-12).

In the Harrington memorandum dated October 6, 2004, from Harrington to Attorney Izzi in TL 130260 regarding the Blake land, Harrington states that he reviewed the title report prepared by Attorney Norton. Harrington notes that the report reflects an additional chain of title out of the Pomfrets "in a later deed" than the one given to Jacob in 1973.[15] (Docket Entry # 27-12).

Beginning in 2004, Millville representatives or attorneys met with "Daprato/FREDAP, Inc. or his representatives or attorney" as well as with "Millville Assessors Office personnel." (Docket Entry # 1, ¶ 11). Millville representatives or attorneys also met with Attorney "Norton, appointed as Land Court Examiner" for TL 130260 and TL 130261,

---

[15] See fn. nine.

"to research and clarify the basis, description, land area, and location of the parcels assessed to, and taken for taxes, against [Jacob] and [Millville] as they relate to the Property." (Docket Entry # 1, ¶ 11). In May 2008, an "Examiner's report" issued. An aerial photograph depicts "each parcel of land involved" in the Examiner's report. (Docket Entry # 1, ¶ 12) (Docket Entry # 1-5).

On September 11, 2008,[16] Millville, represented by Stephen Miller, Esq., and "Daprato and FREDAP," represented by W. Robert Knapik, Esq., "composed a Joint Venture agreement to jointly own and develop the parcels of land." (Docket Entry # 1, ¶ 13) (Docket Entry # 1-6).[17] The September 2008 document attached to the complaint is labeled "Draft" and is not signed. (Docket Entry # 1-6). On November 9, 2008, Coccoli notified John McCoy, Esq. ("Attorney McCoy"), a Land Court title examiner in the registration case, "that they would proceed with Foreclosing Rights of Redemption" on the Blake land and the Thayer land after Daprato and "FREDAP, Inc. refused to cooperate with development or sale of the property involved in [the] Tax Lien

---

[16] The complaint refers to this date as January 6, 2008. (Docket Entry # 1, ¶ 13). The document attached to the complaint contains the September 11, 2008 date. (Docket Entry # 1-6).
[17] The complaint identifies the contracting parties as "Daprato and FREDAP." (Docket Entry # 1, ¶ 13). The actual document identifies the contracting parties as Millville and "FREDAP Realty, Inc." (Docket Entry # 1-6).

Cases." (Docket Entry # 1, ¶ 14).

"On or about January 6, 2009," Millville, "Daprato and FREDAP . . . composed another Joint Venture Agreement to jointly own and develop the parcels of land." (Docket Entry # 1 ¶ 15) (Docket Entry # 1-7). The January 2009 joint venture agreement is not signed. (Docket Entry # 1-7). Language immediately above the signature lines states that, "[T]he parties hereto have executed this Agreement this day of September 2008." (Docket Entry # 1-7). As stated in the document, its purpose is to "jointly own and develop" the "real estate owned by [FREDAP Realty, Inc.][18] situated at 154 Thayer Street" and described in "Book 12247, Page 92," i.e., the 1989 deed of the Blake land and the Thayer land to Daprato, as trustee of FREDAP Realty Trust. The document includes an integration clause. Although not set out in the document, Coccoli and Millville "agreed to [w]ithdraw their Complaint to Foreclose Rights of Redemption in Massachusetts Land Court" in exchange for the joint venture agreement to develop the land. (Docket Entry # 1, ¶ 15).

On January 19, 2010, the Land Court conducted a status conference. (Docket Entry # 1, ¶ 16). On January 21, 2010, Coccoli filed a notice of appearance to proceed as "Pro Se Plaintiff" in TL 130260 and TL 130261. (Docket Entry # 1, ¶ 17) (Docket Entry # 1-8). In a bargain and sale deed dated October

---

[18] See fn. 17.

8, 2010, Millville granted Coccoli "all of its right title and interest in and to that certain land . . . lying easterly and westerly of Thayer Street" and described in the 1973 deed from the Pomfrets to Jacob and the deed from Jacob to Millville. (Docket Entry # 1-10).  D'Arcangelo, in his capacity as president of Millville, signed the October 8, 2010 bargain and sale deed.[19]  (Docket Entry # 1-10).  "On or about October 10, 2010," Coccoli submitted a motion to substitute himself as the real party in interest in TL 130260 and TL 130261.  (Docket Entry # 1, ¶ 19).

"On or about October 15, 2010," Coccoli, Petrillo and D'Arcangelo "of Millville" met with "Daprato, John Daprato, and FREDAP."  (Docket Entry # 1, ¶ 20).  "The parties, again, shook hands and verbally agreed to partner and develop the parcels of land."  (Docket Entry # 1, ¶ 20).  At this point, Coccoli owned the land previously owned by Millville.  (Docket Entry # 1-10). "From October 18, 2010 through April 2013," Coccoli and Millville met with Daprato and "FREDAP to discuss and review options regarding" TL 130260 and TL 130261.  (Docket Entry # 1,

---

[19]  The bargain sale and deed attached to the complaint is dated October 8, 2010.  (Docket Entry # 1-10).  In the complaint, which Coccoli certified "under penalty of perjury," Coccoli attests that the bargain and sale deed is a true and accurate copy of the deed recorded at the registry.  (Docket Entry # 1, ¶ 19).  In opposing the motion to dismiss, Coccoli attaches a bargain and sale deed that is identical in all respects to the one attached to the complaint except for the date of October 8, 2009.  (Docket Entry # 30-1).

¶ 21).

On July 18, 2013, the Land Court held a hearing. (Docket Entry # 1, ¶ 22). At the hearing, Daprato and FREDAP "refused to honor the terms and conditions of their agreement." (Docket Entry # 1, ¶ 22). In an October 16, 2013 email to Coccoli, an individual advised Coccoli of his intention to purchase "the 70 acres" from Daprato. In a return email the following day, Coccoli informed the individual that "the 70 acre parcel can not be sold or leased" because it is subject to a lawsuit in this court. (Docket Entry # 27-18). Coccoli filed this suit on October 31, 2013. The registration case remains pending before the Land Court.[20] (Docket Entry # 27). The parties also indicate that the tax lien cases remain pending before the Land Court.

In the final paragraph of the complaint captioned "Relief Requested" Coccoli seeks "to recover property taxes he and his associates paid during the period of 1993 to 1997" regarding TL 130260 and TL 130261 plus interest and costs through 2012. (Docket Entry # 1). The amount totals $411,000.00.[21] (Docket Entry # 1).

I. Motion to Dismiss (Docket Entry # 28)

Defendants move to dismiss the complaint because Coccoli

---

[20] The filing attaches an unsigned, draft 2012 order to register the land. (Docket Entry # 27-16).
[21] See fn. 14.

lacks standing. (Docket Entry # 28). Defendants contend that the "gravamen of the Complaint is that . . . Skeeter Development, LLC paid taxes on Defendants' real estate." (Docket Entry # 29). Neither the complaint nor the subsequently filed materials, including those filed on January 24, 2014 (Docket Entry # 27), show that Coccoli paid these taxes "or that he, individually has otherwise been damaged," according to defendants. (Docket Entry # 29).

Coccoli submits he has standing because the "'Skeeter' transaction was made in 1997 on behalf of Millville Associates" and he has been "a majority stock holder (50%) of Millville" "since 2002." (Docket Entry # 30). Coccoli also claims standing because he purchased the property from Millville "on October 8, 2009," as set forth in the bargain and sale deed.[22] (Docket Entry ## 30 & 30-1).

## DISCUSSION

Article III constitutional standing limits judicial power to certain "Cases" and "Controversies." U.S. Const. art III, § 2. In order to satisfy "the 'irreducible constitutional minimum of standing,' [t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to" the defendant and "likely to be redressed by a favorable judicial decision." Lexmark

---

[22] See fn. 19.

<u>International, Inc. v. Static Control Components, Inc.</u>, 134

S.Ct. 1377, 1386 (2014); <u>Hollingsworth v. Perry</u>, 133 S.Ct. 2652,

2659 (2013) (Article III standing "requires, among other things,

that [the plaintiff] have suffered a concrete and particularized

injury").  Coccoli, as the party invoking federal jurisdiction,

bears the burden to establish standing.  <u>Blum v. Holder</u>, 744

F.3d 790, 795 (1st Cir. 2014) ("'"party invoking federal

jurisdiction bears the burden of establishing" standing'").

Constitutional standing ordinarily reduces to a three part

"triad:  injury, causation, and redressability."  <u>Wilson v. HSBC</u>

<u>Mortg. Services, Inc.</u>, 744 F.3d 1, 8 (1st Cir. 2014).  As

indicated above, it requires "a concrete and particularized

injury, a causal connection between that injury and the

wrongdoer's conduct, and the likelihood that prevailing in the

action will rectify the injury in some way."  <u>U.S. v.</u>

<u>$8,440,190.00 in U.S. Currency</u>, 719 F.3d 49, 57 (1st Cir. 2013).

An injury in fact is one "'that is concrete, particularized, and

actual or imminent; fairly traceable to the challenged action;

and redressable by a favorable ruling.'"  <u>Blum v. Holder</u>, 744

F.3d at 796 (internal brackets omitted).  Although imminence is

"'a somewhat elastic concept,'" a "'threatened injury must be

certainly impending'" to constitute an injury in fact and

"'allegations of *possible* future injury' are not sufficient."

<u>Id.</u> (citations omitted); <u>see Sea Shore Corp. v. Sullivan</u>, 158

F.3d 51, 56 (1st Cir. 1998) ("[f]uture injury must be imminent to qualify as injury-in-fact").

Standing also has "a prudential component." <u>Gianfrancesco v. Town of Wrentham</u>, 712 F.3d 634, 637 (1st Cir. 2013). One of the three principles of prudential standing "is the general prohibition on a litigant's raising another person's legal rights." <u>Lexmark International, Inc. v. Static Control Components, Inc.</u>, 134 S.Ct. at 1386 (internal quotation marks omitted). This prohibition leads to a "shareholder-standing rule, under which a corporate shareholder (even a sole shareholder) may not sue in his own name to redress injuries suffered solely by the corporation," <u>Gianfrancesco v. Town of Wrentham</u>, 712 F.3d at 637, "even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." <u>Pagan v. Calderon</u>, 448 F.3d 16, 28 (1st Cir. 2006); <u>see</u> <u>Diva's Inc. v. City of Bangor</u>, 411 F.3d 30, 42 (1st Cir. 2005) ("[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock") (ellipses omitted). Although exceptions exist, this "tenet holds true even if the shareholder is the sole owner of the corporation's stock." <u>Pagan v. Calderon</u>, 448 F.3d at 28.

The complaint, liberally construed, identifies two injuries. One injury is to recoup Millville's payment of property taxes (Docket Entry # 1, ¶ 23) and the other injury is to recover for Daprato and FREDAP's refusal to honor their agreement to partner and jointly develop the land situated at 154 Thayer Street (Docket Entry # 1, ¶¶ 13, 15, 20 & 22) (Docket Entry # 1-6 & 1-7).

Addressing the latter, the Town of Millville notified Millville about overdue taxes in 1997. Petrillo paid these property taxes by checks dated March 20, 1997. Succinctly stated, Millville, a corporation, incurred taxes which Petrillo paid. (Docket Entry # 1, ¶¶ 1 & 8) (Docket Entry # 1-2). Coccoli, a shareholder or "member" of Millville since 1992 (Docket Entry # 1, ¶ 2), seeks to recover the payments. He did not own the land subjected to the tax until 2009 or 2010.[23] Although Millville may have suffered financial harm by paying another entity's taxes, Coccoli's status as a shareholder does not mean that he personally suffered a financial harm. Under the shareholder-standing rule, see Diva's Inc. v. City of Bangor, 411 F.3d at 42, Coccoli lacks standing to seek redress for the payment of Millville's taxes.

Similarly, Coccoli is neither a taxpayer nor a creditor

---

[23] The earliest date of the bargain and sale deed is October 8, 2009. See fn. 19. In any event, the parties should not assume that ownership of the land would necessarily confer standing.

with respect to the 1997 payments. At the time Coccoli filed the complaint, he did not own the debt or an assigned cause of action to recover the allegedly erroneous payment. <u>See generally</u> <u>Becker v. Federal Election Commission</u>, 230 F.3d 381, 387 (1st Cir. 2000) (standing is "'assessed under the facts existing when the complaint is filed'"). The plain terms of the bargain and sale deed only conveyed "certain land" to Coccoli. Millville or Petrillo, as opposed to Coccoli, would recover the erroneous payment. Coccoli therefore lacks an injury in fact redressable if this court ruled in his favor.

Turning to the second injury, it is well settled that a party to a contract as well as a third party beneficiary to a contract have standing to sue for breach of contract. <u>Katz v. Pershing, LLC</u>, 672 F.3d at 72 ("invasion of a common-law right (including a right conferred by contract) can constitute an injury sufficient to create standing"); <u>Pollak v. Federal Insurance Co.</u>, 2013 WL 6152335, at *3 (D.Mass. Nov. 21, 2013) (although "intended beneficiary of a promise has standing to enforce a duty of performance, an incidental beneficiary acquires no rights against the contracting parties") (citing <u>Miller v. Mooney</u>, 725 N.E.2d 545, 549-550 (Mass. 2000)); <u>see also</u> <u>Hein v. Freedom from Religion Foundation, Inc.</u>, 551 U.S. 587, 642 (2007) ("[i]n the case of economic . . . harms, of course, the 'injury in fact' question is straightforward"). At

this stage in the proceeding, a plaintiff makes the required showing of an injury to his rights when the complaint "generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract." Katz v. Pershing, LLC, 672 F.3d at 72.

In the case at bar, the September 2008 and January 2009 purported joint venture agreements identify the contracting parties as Millville and "FREDAP Realty, Inc." (Docket Entry ## 1-6 & 1-7). At that time, Coccoli did not own the land conveyed under the bargain and sale deed and the language of these documents fails to show that Millville and "FREDAP Realty Inc." "clearly and definitely intended" their performance to benefit Coccoli. See Miller v. Mooney, 725 N.E.2d 545, 550 (Mass. 2000) (language and circumstances must show that "parties to the contract clearly and definitely intended the beneficiaries to benefit from the promised performance") (internal quotation marks and brackets omitted); Anderson v. Fox Hill Village Homeowners Corp., 676 N.E.2d 821, 822-823 (Mass. 1997); Restatement (Second) of Contracts § 302 (1981); Pollak v. Federal Insurance Co., 2013 WL 6152335, at *3. On or about October 15, 2010, however, Coccoli, Petrillo and D'Arcangelo met with "Daprato, John Daprato, and FREDAP" and "verbally agreed to partner and develop the parcels of land." (Docket Entry # 1, ¶ 20). Under the October 8, 2010 bargain and sale deed (Docket

Entry # 1-10), Coccoli acquired Millville's title to the land
granted from Jacob to Millville (book 14943, page 153).
"Daprato/FREDAP[,] Inc." however "refused to honor the terms and
conditions of their agreement" in July 2013. (Docket Entry # 1,
¶ 22). A few months later, Coccoli filed this action.
Liberally construing the pro se complaint, see Rice v. Holder,
898 F.Supp. at 294 n.2, and considering the other documents in
the record, Coccoli sufficiently alleges a contract and its
breach. Having shown an injury to his rights, he has standing
to pursue the breach of contract claim.

II.  Motions for Real Estate Attachment (Docket Entry ## 18 &
21)

     In two separate motions, Coccoli seeks to attach real
estate owned by Daprato, FREDAP Realty Trust and/or FREDAP, Inc.
up to the amount of $411,000.00. (Docket Entry # 18 & 21). The
$411,000.00 figure represents the amount of taxes Petrillo paid
for Millville purportedly on the Blake land and the Thayer land
for the 1993 to 1997 time period and interest and costs from
1997 through 2012. (Docket Entry # 18-1) (Docket Entry # 1, p.
5). The first attachment motion lists 23 properties owned by
one or more defendants, including two parcels at 148 Thayer
Street, which Coccoli seeks to attach. The motion also includes
the necessary affidavit. (Docket Entry # 18-1).

     Defendants submit that Millville did not pay any taxes on

the Blake land and the Thayer land located at 154 Thayer Street. Hence, as argued at the hearing, Coccoli does not have a reasonable likelihood of success on the merits.

DISCUSSION

Federal Rule of Civil Procedure 64 allows for remedies, including attachment, as provided for under "the law of the state where the court is located." Rule 4.1 sets out the applicable Massachusetts law applicable to attachment. Mass.R.Civ.Proc. 4.1; see Mass. Gen. Laws ch. 223, § 42; Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 30 n.1 (1st Cir. 2005). A prejudgment attachment authorizes a seizure of "property of the defendant to be held as security for any judgment the plaintiff may recover." Mullane v. Chambers, 333 F.3d 322, 329 (1st Cir. 2003); see also Micro Signal Research, Inc. v. Otus, 417 F.3d at 30 n.1 (explaining distinction between attachment and trustee process); see, e.g., Solans v. McMenimen, 951 N.E.2d 999, 1004 (Mass.App.Ct. 2011) (upholding attachment of "'all of the right, title and interest of the within named defendant . . . has in and to any and all real estate located within the County of Hampshire").

Under Rule 4.1(c), "property may be attached for a specified amount 'upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater

than the amount of the attachment over and above any liability insurance' possessed by defendants." <u>U.S. Fidelity and Guaranty Co. v. Arch Insurance Co.</u>, 578 F.3d 45, 49 (1st Cir. 2009). "[T]he central question on [a] motion for approval of attachment is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." <u>Id.</u> at 52 (internal quotation marks and citations omitted). Plaintiff bears the burden to demonstrate a reasonable likelihood of success on the merits. <u>See</u> <u>Greenbriar Companies, Inc. v. Springfield Terminal Railway</u>, 477 F.Supp.2d 314, 317 (D.Mass. 2007). Defendants bear the burden to show "the availability of liability insurance to satisfy the judgment." <u>Id.</u>; Mass. R. Civ. P. 4.1(c).

In seeking an attachment, a plaintiff "must submit affidavits setting forth 'specific facts sufficient to warrant the required findings based upon the affiant's own knowledge, information or belief.'" <u>Metropolitan Property and Casualty Insurance Co. v. Boston Regional Physical Therapy, Inc.</u>, 550 F.Supp.2d 199, 201-202 (D.Mass. 2008) (quoting Mass.R.Civ.P. 4.1(h)); Mass.R.Civ.P. 4.1(c) ("motion shall be supported by affidavit or affidavits meeting the requirements set forth in Rule 4.1(h)"). The affidavit and the first attachment motion seek an attachment based on the indebtedness in property taxes paid for 1993 to 1997 and the costs and interests thereafter through 2012. (Docket Entry ## 18 & 18-1); <u>see</u> <u>also</u> <u>Mahoney v.</u>

<u>Morgan</u>, 2010 WL 3703243, at *2. The second attachment motion does not elucidate the basis for an attachment as either the tax indebtedness claim or the breach of the joint venture agreement claim. <u>Id.</u>

As explained in the previous section, Coccoli lacks standing to pursue the tax indebtedness claim. Accordingly, there is no reasonable likelihood of success on the merits for that claim.

In the alternative, even if plaintiff had standing, the facts in the record do not demonstrate a reasonable likelihood of success that Petrillo paid taxes for property owned by Daprato, as trustee of FREDAP Realty Trust. The record includes disputed chains of title emanating from the Pomfrets. The Pomfrets conveyed different descriptions of 103 acres of property to Jacob and thereafter to Millville for land lying westerly of Thayer Street than they did for the Thayer land of 30 acres and the Blake land of 40 acres conveyed to DiMaio, Johnston and Gold and thereafter to Fred and John Daprato and then to Daprato, as trustee of FREDAP Realty Trust.

The tax deed recorded by the Town of Millville in November 1994 reflects that Millville was delinquent in paying taxes for 1993 and 1994 for property located at 179 Thayer Street consisting of 76 acres as described in the 1992 deed from Jacob

to Millville.[24]  A March 24, 1997 instrument of redemption filed

by the Town of Millville acknowledges satisfaction of the tax

title account.  In contrast, the tax deed recorded by the Town

of Millville in May 1997 reflects that Daprato, as trustee of

FREDAP Realty Trust, was delinquent in paying taxes for 1995 and

1996 for property located at 154 Thayer Street consisting of

slightly less than 70 acres.  The instrument of redemption filed

by the Town of Millville acknowledges that Daprato, as Trustee

of FREDAP Realty Trust, satisfied this tax title account in

2001.  Finally, the Tax Collector interprets the March 20, 1997

checks signed by Petrillo as paying property taxes on the

property located at 179 Thayer Street and the 2001 payment by

Daprato as paying property taxes on the property located at 154

Thayer Street.  These as well as additional facts in the record

establish that Coccoli fails in his burden to establish a

reasonable likelihood of success on the tax indebtedness claim.

Coccoli does not raise the breach of contract claim as a

basis for an attachment.  Even if he did, however, there is no

showing of a reasonable likelihood of success.

In order to establish a contract claim under Massachusetts

law, "'the plaintiff must prove that a valid, binding contract

---

[24]  As previously explained, the 1992 deed (book 14943, page 153)
does not include the acreage of the property whereas the
predecessor deed (book 5393, page 276) identifies acreage of 103
acres of the property.

existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir. 2013) (internal brackets omitted); accord Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013). Even assuming that the January 2009 document was a contract, Coccoli fails to show he was a party to that joint venture agreement. The agreement unequivocally states that it is "between Millville . . . and FREDAP Realty, Inc." (Docket Entry # 1-7).

More than a year later, Millville conveyed to Coccoli all of its right and title to the land it received in the 1992 deed from Jacob (book 14943, page 153). (Docket Entry # 1-10). Thereafter, on October 15, 2010, Coccoli, Petrillo and D'Arcangelo "of Millville" met with "Daprato, John Daprato, and FREDAP." (Docket Entry # 1, ¶ 20). "The parties, again, shook hands and verbally agreed to partner and develop the parcels of land." (Docket Entry # 1, ¶ 20). At a hearing in the Land Court on July 18, 2013, however, "Daprato/FREDAP Inc." refused to abide by the terms and conditions of the verbal agreement. (Docket Entry # 1, ¶ 22).

As previously explained, affidavits submitted in support of an attachment must "set forth specific facts." Mass.R.Civ.P. 4.1(h). The foregoing statements are conclusory as opposed to specific.

Coccoli also fails to show a reasonable likelihood of success that that parties had a binding contract, that Daprato or FREDAP breached the terms of the agreement or that Coccoli suffered damages as a result of the breach.  Furthermore, viewed against the backdrop of the January 2009 joint venture agreement, the fact that "[t]he parties, *again*, shook hands" (Docket Entry # 1, ¶ 20) (emphasis added) coupled with referring to Coccoli, Petrillo and D'Arcangelo "of Millville" creates doubt as to whether Coccoli is a party to the agreement.  At this juncture, Coccoli also fails to show a reasonable likelihood of success that he is an intended third party beneficiary of the verbal agreement as opposed to an incidental beneficiary.  See generally Alicea v. Machete Music, 744 F.3d 773, 784-787 (1st Cir. 2014).  Failing to show a reasonable likelihood that he will recover a judgment on the breach of contract claim, he is not entitled to a prejudgment attachment.  Separately, he also fails to argue, let alone show, the amount of a recovery on the breach of contract claim.  See, e.g., Energy Power Co. Ltd. v. Xiaolong Wang, 2013 WL 6234625, at *11 (D.Mass. Dec. 3, 2013) (denying attachment because, although court "found a likelihood of success," the plaintiffs failed to show "the amount of that recovery").

## CONCLUSION

In accordance with the foregoing discussion, the motion to

dismiss (Docket Entry # 28) is **ALLOWED** as to the tax

indebtedness claim and **DENIED** as to the breach of contract

claim.  This action will proceed only with respect to the claim

for breach of a joint venture agreement.  The motions for a

prejudgment attachment (Docket Entry ## 18 & 21) are **DENIED**.


        /s/ Marianne B. Bowler
        **MARIANNE B. BOWLER**
        United States Magistrate Judge